## McCHESNEY v. CITY OF SYRACUSE et al.

(Supreme Court, Special Term, Onondaga County. June 7, 1892.)

1. MECHANICS' LIENS—PUBLIC BUILDING—SURETY OF DEFAULTING CONTRACTOR.
    Where nothing is due contractors when they abandon work on a public building, and notice of lien is filed by material men for material furnished, the just and reasonable expense of completing the work by the city is payable

out of the fund appropriated for that purpose before the lien attaches; and this rule obtains where the surety of the defaulting contractors, with the consent of the city, complete the work.

**2. SAME—ACTING AS AGENT FOR CITY.**

Where such surety is also the assignee of the insolvent contractors, the question whether he acted as agent of the city, or as assignee of the contractors, in which latter event the lien would attach to the fund before payment of the expense for completing the work, depends on his intent; and that it was his intent to act as agent for the city appears from the facts that he had no funds belonging to the contractors' estate; that he advanced his own funds; and that it was to his interest to act as agent for the city, because, if he acted as assignee, the loss, if any, would fall on him, individually, and the profits, if any, would belong to the estate.

**3. SAME.**

The fact that the city issued a check to the surety as "assignee" of the contractors, in payment of the work, is not conclusive that the building was completed by him as such assignee, when it appears that the word was placed in the check by inadvertence, and that the moneys realized on the check were deposited by the surety to his individual account.

**4. SAME—RELETTING CONTRACT.**

The act of the surety in finishing the building as agent for the city is simply the completion of the original contract, and hence the letting of a new contract to the lowest bidder was unnecessary.

**5. SAME—RATIFICATION BY CITY.**

The fact that the architect who empowered the surety to complete the building had no authority from the city is immaterial, where the city afterwards ratified the architect's acts.

Action by George McChesney against the city of Syracuse, William Crabtree, and others to foreclose a mechanic's lien. Judgment for defendants.

Gill & Stillwell, for plaintiff.
Baldwin & Ide, for defendant city of Syracuse.
Wilson, Kellogg & Wells, for defendants William Crabtree and others.

WRIGHT, J. The city of Syracuse, through its board of education, on October 2, 1890, let a contract to the defendants Baker & McAllister for furnishing materials and performing certain carpenter work on a schoolhouse, the city agreeing to pay therefor $4,434, in installments, from time to time, on certificates of the supervising architect, as the work progressed. It was stipulated in the contract that, should the contractors neglect to furnish materials and perform the contract, the board of education should have the right to "enter upon and take possession of the premises, and provide materials and workmen sufficient to finish the work, * * * and the expense of * * * finishing of the various work shall be deducted from the amount of the contract." The defendant William Crabtree was the bondsman for the contractors, for the faithful performance of their part of the contract. Baker & McAllister proceeded with the work until March 26, 1891. They had received $2,600 on the contract, which was the full amount due them, and was also the value of all the work performed and materials furnished by them, less 15 per cent., which, under the contract, was retained by the city until the last payment should become due. They then abandoned the contract, and made a general assignment for the benefit of creditors to said William Crabtree. Thereafter, on March 30, 1891, the plain-

tiff filed his notice of lien for materials furnished, worth $1,322.90. Crabtree thereupon had an interview with the architect, who, under the contract, had charge and supervision of the work for the board of education, with reference to this contract. The architect, though without authority to employ any one, assumed that authority, and requested him to complete the building, assuring him that there was a sufficient amount remaining in the treasury, set apart for that purpose, to complete the work, and save him harmless. Thereupon Crabtree, at his individual expense of $1,880, besides his own personal labor, worth $250, furnished the necessary materials and labor, and completed the contract, under the supervision and approval of the architect; and the building, as thus finished, was accepted by the board of education and the city, and occupied for school purposes. The plaintiff now claims that Crabtree, in performing the contract, acted in his capacity as assignee of the insolvent firm of Baker & McAllister, and that, therefore, the plaintiff's lien binds the balance of the fund appropriated for the construction of this building, which remained in the hands of the city treasurer at the time when Baker & McAllister abandoned the contract. The defendants claim that Crabtree acted, not in his capacity as assignee, but as agent of the city. The solution of this question depends upon his intent; and, to determine that intent, we must examine all the surrounding circumstances. What was his situation at the failure of Baker & McAllister? He was liable on his bond for the completion of their contract. There was a fixed amount in the city treasury, set apart for that purpose, and he knew the figures. He naturally desired to guard himself against loss. He knew from the contract, which he had guarantied, that the city had a right to complete the abandoned building, and charge the expense against the contractors. He desired the employment to complete the contract in order that, by his own personal supervision, he might secure the work with the utmost economy. Did he, as assignee, have a fund to apply to the purpose of this undertaking, thus affording an opportunity to attempt to relieve himself from all danger of loss by saddling the risk of the enterprise on the estate? He had only property from which less than $50 was realized. Lack of funds would seem to prevent that attempt.

Great stress is laid by the plaintiff on the manner in which the payment of $600 was made to Crabtree on April 17, 1892. On that date Crabtree, having proceeded with the work, sent the defendant, George McAllister, who was then in his employ, to the architect, for his certificate or estimate of the amount earned by him. The architect gave McAllister a certificate for $600. Though the certificate ran to "William Crabtree, assignee," and the check issued thereon by the clerk of the board of education, on the city treasurer, was payable to the order of "William Crabtree, assignee," and, upon delivering the check to his banker, to be placed to his individual credit in the bank, he indorsed his name thereon, "William Crabtree, assignee," it is evident that such payment was not intended by the board of education or the city of Syracuse to be made to William Crabtree in his capacity as assignee of Baker & McAllister, and that William Crabtree did not intend to receive

it in that capacity; but the word "assignee," in .the estimate and check, was placed there by mistake and inadvertence, and without any authority from the board of education, or the city of Syracuse, or William Crabtree. The business of obtaining the estimate and check was done by the agent of William Crabtree, and he had no knowledge that the word "assignee" was used therein until the agent delivered the check to him. He gave the city treasurer his individual receipt for the money, and affixed the word "assignee" to his indorsement on the check, at the instance of his banker, only for the clerical purpose of making the indorsement conform to the unauthorized description of the payee, contained on the face thereof, which Crabtree evidently considered was only a matter of form, and of no essential importance. From all the circumstances, it is clear that the word "assignee," thus used in the payment of the $600, was not intended by any of the parties to indicate any relationship of that fund to the insolvent estate of Baker & McAllister, or to indicate that the relationship of William Crabtree to the work was that of the assignee of that firm. Neither did any such intention enter into the giving or receiving of the second estimate, made in the same form, for a subsequent payment, which was destroyed.

It is urged that Crabtree, in completing the contract, did not intend to act as agent of the board of education and the city, and did not so act, for the reason—First, that the board of education did not employ him by any resolution to that effect; and, second, that the unfinished work, being capable of letting on competitive bids, could, according to the city charter, only be legally let, by a new contract, to the lowest bidder, upon a proposition to that effect offered to the public. The answer to the second proposition is that this identical work was a part of the entire work, and therefore had already been let to the lowest bidder therefor, who entered into the original contract, and Crabtree was simply carrying out that original contract; and the answer to the first proposition is that, though the board did not employ him by resolution to that effect, he was employed by the architect who was in charge of the work, and he performed the work under the supervision of the architect, and with the knowledge of the president of the board. The board and the city were thus charged with notice of the undertaking and progress of the work; and the acceptance of the building, with full knowledge of all the facts, was a ratification both of the original employment of Crabtree by the architect, and of the agency of Crabtree in completing the contract. If Crabtree entered on this undertaking as assignee, as a financial speculation in behalf of the insolvent estate, without legal authority, having no funds belonging to the estate, advancing his own funds therefor, where the losses, if any, would fall upon him individually, and the profits, if any, would inure to the estate, thus preferring the interests of strangers to his own, it was, in this day of excessive materialistic tendencies, a refreshing example of self-sacrifice in ordinary business affairs,—a devotion to the doctrine of altruism of such an exalted character that, in the entire absence of a sentimental basis for such action, I need much more cogent proof, to be constrained to believe it, than this case presents.

The object of the mechanic's lien law, as between the owner, contractor, and lienor, is to enable the lienor to intercept, in his behalf, moneys due or to become due the contractor from the owner. In this case nothing was due the contractors at the date of their abandonment of the work. Therefore, at that date, there was nothing for the notice to act upon and intercept. The city had the right to continue the contract in force, and procure the performance of the unfinished covenants of the contractors, and the just and reasonable expense thereof is payable out of the fund appropriated for that purpose, before the lien attaches. Van Clief *v.* Van Vechten, 130 N. Y. 571, 29 N. E. Rep. 1017. And this is the rule where the surety of the defaulting contractor, with the consent of the city, performs it. City of St. Louis *v.* Lumber Co., 42 Mo. App. 586. In this case the expense of such performance exceeded the unexpended balance to become due on the completion of the contract. Therefore, no fund ever existed on which the notice operated as a lien.

The plaintiff is entitled to judgment against defendants James E. Baker and George McAllister for $1,322.90, and interest with costs. The defendant the city of Syracuse is entitled to a judgment dismissing the complaint as to itself, with costs against the plaintiff; and the defendant William Crabtree, individually and as assignee, is also entitled to a judgment dismissing the complaint as to him, with costs against the plaintiff; and the defendant William Crabtree is entitled to a judgment directing the city of Syracuse to pay to him $1,234, without costs.