OF THE

# APPELLATE COURT OF ILLINOIS

### DURING THE YEAR 1902.

102 1
a211s 24

102 1
e114 ¹285

### City of Chicago et al. v. Joseph Hanreddy.

1. CONTRACTS—*For Making Public Improvements to be Let to the Lowest Bidder.*—All contracts for the making of any public improvement, when the expense exceeds $500, must be let to the lowest responsible bidder.

2. LOCAL IMPROVEMENTS—*Within the Meaning of the Statute.*—A local improvement, within the meaning of the statute, is a public improvement which, by reason of its being confined to a locality enhances the value of adjacent property, as distinguished from benefits diffused by it throughout the municipality.

3. MUNICIPAL GOVERNMENT—*Letting of Contracts for Public Improvements.*—As a general rule of public policy, the letting of contracts for public improvements to the lowest responsible bidder, after advertising for bids, will best subserve public economy. In construing a statute, courts are to look to the intention of the legislature.

4. STATUTES—*Repeals by Implication Not Favored.*—Repeals by implication are not favored, and a statute relating exclusively to local improvements does not repeal by implication a provision in a former statute, including improvements which are not local.

**Bill for an Injunction.**—Appeal from the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge presiding. Heard in this Court at the March term, 1901. Affirmed. Opinion filed April 21, 1902.

(1)

Statement.—This is an appeal from an interlocutory order of injunction restraining the city of Chicago and certain officers of the city, the appellants, from doing certain work mentioned in appellee's bill, otherwise than by a contract or contracts let, after advertising and securing bids therefor, to the lowest responsible bidder or bidders, according to law, until the further order of the court. The bill was filed December 24, 1901, by appellee, as a tax-payer and payer of water rates. It appears from the bill that the city of Chicago passed an ordinance for the construction in said city of section D of the Lawrence avenue main conduit for intercepting sewers; that May 2, 1898, a contract was entered into between the city and John W. Farley and John Green, composing the firm of Farley & Green, for the construction by them of the work. The contract provided that the work should be commenced on or before May 3, 1898, and should progress thereafter uninterruptedly, unless otherwise ordered by the commissioner of public works, and should be completed on or before September 1, 1899, the time of commencement, rate of progress and time of completion being made essential conditions of the contract. The contract provided that everything pertaining to the work should be in every particular satisfactory to the commissioner of public works, and that the work should be done in accordance with certain plans and specifications which were made part of the contract. The contract contains, among numerous other provisions, the following:

"It is hereby provided and agreed that the said work shall be prosecuted with such force as the commissioner of public works shall deem adequate to its completion within the time specified, and if at any time the said parties of the first part shall refuse or neglect to prosecute the work with a force sufficient, in the opinion of said commissioner, for its completion within said specified time, or if, in any event, the said parties of the first part shall fail to proceed with the work in accordance with the requirements and conditions of this agreement, that the said city, by its commissioner of public works, shall have full right and authority to take the work out of the hands of the said parties of the

City of Chicago v. Hanreddy.

first part, and to employ other workmen to complete the unfinished work, and to deduct the expenses thereof from any money that may be due and owing to said parties of the first part on account of the work, or to re-let the same to other contractors, as provided for hereinafter."

It further appears from the bill as follows: Farley and Green, and the American Surety Company, of New York, as their surety, executed to the city, May 3, 1899, a bond in the penal sum of $239,000, conditioned for the faithful performance by said Farley and Green of their contract with the city, which bond was accepted by the city. The conduit was to be about 12,817 feet in length, 3,905 feet of which, in Lawrence avenue, and extending from Lake Michigan to Beacon street, was to be what is known as open cut, or by digging the earth down from the surface, and the remainder of which was to be tunnel work, under the surface of the ground. Farley & Green proceeded with the work until they had completed the 3,905 feet of open cut and 694 feet of the tunnel work, in all 4,599 feet, and then abandoned and refused to proceed with the work, leaving 8,218 feet of the tunnel work uncompleted. Subsequently, October 21, 1898, the city council passed an ordinance whereby, after reciting the default of Farley & Green, the commissioner of public works was directed to advertise for bids for the completion of the work provided for by the Farley & Green contract. The commissioner of public works advertised for bids as directed by the ordinance, and, in response to the advertisement, received the following bids:

|  | " Per foot. |  |
|---|---|---|
| Griffiths & McDermott | $81 | 25 |
| Joseph Hanreddy | 68 | 00 |
| Fitz Simons & Connell | 75 | 00 |
| Nash Brothers | 71 | 90 " |

November 5, 1901, the commissioner of public works sent a written communication to the city council, stating that he had advertised for bids, in accordance with the ordinance of October 21, 1901, and transmitting the bids to the council. In this communication the following appears:

" In this communication I beg to call your attention to the fact that the estimates made by the department of public works, on this work, were $66 per foot, actual cost, not taking into consideration any unforeseen delays that might be caused in the completion of the work.   The estimate of the department within which the work could be done was $70 per foot, taking everything into consideration.   As the least bid of $68 per foot is between these figures, and the said work, if done by day labor, would progress rapidly, and all chances of extras on account of any unforeseen delays or other conditions would be eliminated, I would respectfully suggest to your honorable body that before an award is recommended that the policy of doing said work by day labor be thoroughly investigated."

December 16, 1901, the city council, after receiving the communication from the commissioner of public works above mentioned, passed the following ordinance, which, omitting a lengthy preamble thereto, is as follows:

" Be it ordained by the city council of the city of Chicago :

Section 1.    That the commissioner of public works be and he is hereby authorized and directed to complete the work required by the contract between Farley & Green and the city of Chicago, dated May 2, 1898, for the construction of section D, open cut and tunnel, Lawrence avenue, of main conduits for intercepting sewers, directly, and not by contract, and in the employment of labor thereon to employ exclusively laborers and artisans whom the city shall pay by the day.

All material of the value of five hundred dollars and upward, used in the construction of said work, shall be purchased by first advertising and then letting contracts therefor to the lowest responsible bidder in the method provided by law.

Every laborer and artisan employed under this section shall be certified by the civil service commission to the commissioner of public works, in accordance with the requirements of an act of the legislature of the State of Illinois, entitled ' An act to regulate the civil service of cities,' in force March 20, 1895, and the rules of the civil service commission of the city of Chicago.

On or before the fifteenth day of each and every month after the construction of said work has begun, the commissioner of public works shall submit a detailed report to the city council, showing the cost of the labor thereon and the

amount of and cost of the work accomplished during the preceding month.

Sec. 2. The commissioner of public works is hereby authorized and directed to reject all bids for the completion of section D, open cut and tunnel, Lawrence avenue, of main conduits for intercepting sewers, received pursuant to advertisement published under authority of an ordinance passed October 21, 1901, authorizing and directing the commissioner of public works to advertise for bids for said work, and transmit the same to the city council; and all such bids are hereby rejected, and said ordinance of October 21, 1901, is hereby rejected.

Sec. 3. This ordinance shall take effect and be in force from and after its passage."

The bill avers that the city and the commissioner of public works intend to construct said uncompleted work as directed by the last mentioned ordinance; that the payment for the same is to be made from the water fund, and that the work involves an expenditure in excess of $500,000, $200,000 of which will be expended for work and labor, exclusive of material, etc., and will cost the city and taxpayers a sum greatly in excess of what the cost would be if the work should be let to the lowest responsible bidder, as provided by law.

The bill prays for an injunction and is sworn to. Appellants demurred to the bill, and the court overruled the demurrer and made an injunction order as heretofore stated.

CHARLES M. WALKER, corporation counsel, THOMAS J. SUTHERLAND and ROSWELL B. MASON, assistant corporation counsel, attorneys for appellants.

JOSEPH B. DAVID, attorney for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

The city is incorporated under "An act to provide for the incorporation of cities and villages," approved April 10, 1892. (Hurd's Revised Statutes, 1895, Chap. 24.) Section 50 of article 9 of chapter 24 is as follows:

"Sec. 50. All contracts for the making of any public improvement to be paid for in whole or in part by a special

assessment, and any work or other public improvement, when the expense thereof shall exceed $500, shall be let to the lowest responsible bidder in the manner to be prescribed by ordinance, such contract to be approved by the mayor or president of the board of trustees. *Provided, however,* any such contract may be entered into by the proper officer without advertising for bids, and without such approval, by a vote of two-thirds of all the aldermen or trustees elected."

It is contended by appellants' counsel that this section does not require the city to let to the lowest responsible bidder, work the expense of which will exceed $500; that the section does not require the city to do all the public work by contract when the expense thereof shall exceed $500; that the words " all contracts for " are to be understood as being inserted between the word " and " and the words " any work or other public improvement," and that so reading the section, it is only when a contract is actually let for work or a public improvement, the expense of which will exceed $500, that the contract must be let to the lowest responsible bidder. In other words, that when no contract is let, the section does not apply, and the city may do the work by the employment of daily laborers or otherwise. If this is a correct interpretation of the section, appellants' counsel are, as we think, entitled to the credit of being its original and first discoverers. It is matter of common knowledge that the city, in practice, has uniformly interpreted the section as requiring the letting by contract, work, the estimated expense of which exceeded $500. The language is, " All contracts for the making of public improvements to be paid for in whole or in part by special assessment, *and any work or other public improvement, when the expense thereof shall exceed $500,* shall be let to the lowest responsible bidder," and we think the section, in plain terms, requires any work or other public improvement, the expense of which exceeds $500, to be let by contract to the lowest responsible bidder. It is further urged that section 50 applies only to local improvements, and that the improvement in question is not a local but a general public improvement, and reliance is placed on the title of article 9,

namely, "Special Assessments for Local Improvements." This title of article 9 is wholly unnecessary, and was not required by the constitution or otherwise, and can not be held to affect the meaning of any section in the article. If a title is to be looked to in interpreting section 50, it is the title of the act, namely, "An act to provide for the incorporation of cities and villages," and, certainly, section 50, in requiring all work or other public improvement, the expense of which shall exceed $500, to be let to the lowest responsible bidder, can not be said to be non-germane to the title of the act. Counsel say that, in construing a statute, courts are to look to the intention of the legislature, in which statement we fully concur. The object sought to be attained by the legislature, in the enactment of section 50 of article 9, was economy on the part of municipalities in making public improvements, and section 50 is an expression of legislative opinion that, as a general rule, the letting of contracts to the lowest responsible bidder, after advertising for bids, will best subserve such economy. It is the public policy of the state, evidenced by its legislation, that all public work and improvements involving considerable expense, shall be let to the lowest responsible bidder, thus determining, in effect, that work so let will cost less than if let at the discretion of officials, and without competitive bidding. But counsel for appellants contend that article 9 is repealed by "An act concerning local improvements," approved June 14, 1897. (Hurd's Rev. Stat. 1901, Chap. 24, p. 376.) Section 74 of the act is as follows:

"Sec. 74. Letting Contracts—When City, etc., May Perform the Work.—All contracts for the making of any public improvements to be paid wholly or in part by special assessment or special tax, and any work or other public improvements when the expense thereof shall exceed five hundred dollars ($500) shall be let to the lowest responsible bidder in the manner herein prescribed, such contracts to be approved by the president of the board of local improvements. In case of any work in which it is estimated that the work will not cost more than five hundred dollars ($500), if after receiving bids it shall appear to said board of local improvements that said work can be performed

better and cheaper by the city, town or village, or the authorities thereof, the authorities of the city, town or village shall perform said work and employ the necessary help therefor, and the cost of said work by said city, town or village, or the authorities thereof, shall in no case be more than the lowest bid received."

In City of Chicago v. Blair, 149 Ill. 310, the court had occasion to distinguish between an improvement merely local and a general public improvement, such as sprinkling the streets, and say:

"A local improvement within the meaning of the statute, is a public improvement which, by reason of its being confined to a locality, enhances the value of adjacent property, as distinguished from benefits diffused by it throughout the municipality."

·It is averred in the bill that the work in question is part of a sewerage system, instituted for the purpose of freeing the water supply of the city of Chicago from contamination, and that the cost thereof is to be paid out of the water fund. It must, therefore, be conceded that, although the work contemplated is a public improvement, it is not a local improvement as defined by the court in the case cited. The title of the act of 1897, being "An act concerning local improvements," it must be held that section 74 applies only to local improvements, because to hold otherwise would be to hold the section, at least in so far as it relates to "any work or other public improvements," unconstitutional, as not being germane to the title, which is, if possible, to be avoided. Hogan v. Akin, 181 Ill. 448.

To hold, in view of the title of the act, that section 74 relates only to local improvements, does no· violence to the language used, because local improvements, such as are mentioned in the act, are also public improvements. The language, "any work or other public improvement" in section 74 is, in its ordinary acceptation, sufficiently comprehensive to include any work or any public improvement, whether local or not; but the meaning of· the language is restricted by the title to local improvements. Were it not for this restrictive effect of the title, the words used would

have to be taken in their ordinarily accepted meaning, namely, as comprehending any work or public improvement the expense of which would exceed $500. The title of the act of 1872, viz., "An act to provide for the incorporation of cities and villages," does not in the least tend to restrict or limit the meaning of the words "and any work or other public improvement," in section 50 of article 9. These words, therefore, as used in that section, must be held to be used in their ordinarily accepted meaning.

Counsel quoted the following from the opinion in Culver v. Third National Bank of Chicago, 64 Ill. 528:

"A subsequent statute revising the whole subject of a former one, and intended as a substitute for it, although it contains no express words to that effect, operates as a repeal of the former."

The rule thus guardedly expressed has no application to the question under discussion. The act of 1897 is not a revision of the whole subject of the act of 1872; nor is it intended as a substitute for that act; neither is it a revision of the whole subject of article 9 of the act of 1872. The act of 1897, as admitted by appellants' counsel, relates exclusively to local improvements, or such as enhance the value of property adjacent to them, while the language of section 50, article 9, of the act of 1872, "any work or other public improvement," includes work and improvements not merely local, but such that the benefits thereof are diffused throughout the municipality. Repeals by implication are not favored, and it can not reasonably be said that a statute relating exclusively to local improvements can, by implication, repeal a provision in a former statute including work and improvements not local, as that term has been defined by the Supreme Court. But counsel contend that even though section 50 of article 9 is held to be in force, the city, by originally letting the contract to Farley & Green, fully complied with its provisions, and that they having abandoned the work, the city has the right to complete it in any way it pleases. The length of the uncompleted part of the tunnel is 8,218 feet; the lowest estimate of the cost

of the work, made by the department of public works, as stated in the extra official suggestions of the commissioner of public works to the city council, is $66 per foot, or $542,388.  The work is susceptible of being let by contract to the lowest bidder, as is evidenced by the ordinance of October 21, 1901, ordering the commissioner of public works to advertise for bids, and by the bids, the lowest of which was only $2 per foot more than the lowest estimate made by the department of public works, and was $2 per foot less than "the estimate of the department within which the work could be done, taking everything into consideration," as stated by the commissioner in his communication to the city council.  The bid of $68 per foot would, in all probability, have been accepted and a contract for the work let to the bidder, had it not been for the extra official suggestion of the commissioner that it should be done by daily labor.

If the contention of counsel that the letting of any work, however expensive, to the lowest bidder, in the first instance, is full compliance with section 50, and exhausts the force of that section, then the logical conclusion is that if a contract be let to the lowest responsible bidder, and the contractor abandons the contract the next day after its execution, the city may perform the work as it may choose, without advertising for bids or letting the work by contract.  We can not concur in this view.  The language of the section is, " and any work or public improvement, when the expense thereof shall exceed $500, shall be let," etc.  This language clearly applies equally to work which remains to be done, in consequence of the abandonment of a contract by a contractor, and to work contemplated but not commenced.  McChesney v. City of Syracuse, 22 N. Y. Supp. 507, cited by counsel, is not in point.  In that case the surety of the contractor, on his bond for the performance of the contract, went on and completed the contract after the contractor had abandoned it, and he was employed by the architect who had charge of the work and performed it with the knowledge of the board of edu-

cation, the other contracting party. The suit was for a lien for work done on a building. Counsel purports to quote the statute of New York, in connection with the case, which is not referred to in the bill nor put in evidence.

Counsel for appellants also cite, In the Matter of John G. Leeds, 53 N. Y. 400; The Bass Foundry, etc., 115 Ind. 234; and the Board of Commissioners, etc., v. Iron & Steel Co., 123 Ind. 364.

In the case in 53 N. Y. the work was let to a second contractor, without advertisement, or competitive bidding, after its abandonment by the original contractor, notwithstanding the statute provided, " The city shall, in no case, proceed with the construction of any sewer except upon the advertisement for proposals for the construction of the same as herein provided." The language is not, in our opinion, as strict as that of section 50, article 9, " any work," etc., but the opinion tends to support the contention of appellants.

The Indiana cases cited are not in point. In each case the suit was for material furnished, which went into a building and which was accepted and enjoyed by the commissioners, and the court held that the defendant, the Board of Commissioners, was liable.

Counsel cite Matter of Emigrant Ind. Sav. Bank, 75 N. Y. 388, and, in connection therewith, quote section 91, Art. 16 of the charter of New York City, as follows :

" Whenever any work is necessary to be done to complete or perfect a particular job, or any supply is needful for any particular purpose, which work and job is to be undertaken or supply furnished for the corporation, and the several parts of the said work or supply shall together involve the expenditure of more than one thousand dollars, the same shall be by contract, under such regulations concerning it as shall be established by ordinance of the common council, excepting such works now in progress as are authorized by law or ordinance to be done otherwise than by contract."

The case was an application to vacate an assessment, one ground of the application being that no contract for the work, for the expense of which the assessment was laid,

was advertised, in conformity with the provisions of section 91.  The court say:

"The provisions of section 91, in our judgment, imperatively require, that where an aggregate expenditure of more than $1,000 is involved in the completion, in all its parts, of any particular job, to be undertaken for the corporation, or in obtaining supplies to be furnished to it for any particular purpose, the same shall be by contract, to be awarded to the lowest bidder after advertisement for sealed proposals, unless otherwise ordered by vote of three-fourths of the members elected to the common council."

The language of section 91, above quoted, is not, in our opinion, more strict, in substance, than is the language in section 50, article 9, "any work," etc., and that the decision is against appellants' contention.

Numerous other cases have been cited by appellants' counsel in support of their various contentions, which we have carefully considered, but which we do not deem it necessary to refer to specifically.  It is sufficient to say that, on full consideration of the whole matter, we feel compelled to hold that section 50 is in full force, and that it plainly requires all work, the expense of which exceeds $500, to be let by contract to the lowest responsible bidder, after advertisement for bids.  It is urged that, by reason of the provision in the contract between Farley & Green and the city, that the city, on the refusal of the contractors to proceed with the work, may employ other workmen to complete it, the city may complete it by employing daily labor. It seems to us that it should be obvious to any intelligent mind, lawyer or layman, that the city can not, by contract with private parties, acquire power not conferred on it by its charter.  It is claimed by appellants' counsel that appellee's interest is not such as to entitle him to maintain the bill, and that by reason of the bond of Farley & Green and their surety, neither he nor the city can suffer loss.  It is averred in the bill that appellee is the owner of certain described real property, situated in the city, on which he has paid taxes and assessments, and that, for many years past, he has paid all water rates and charges assessed against

said premises by the city.   He is therefore interested, as a taxpayer and a contributor to the water fund, from which it is proposed to pay for the contemplated work, in preventing the illegal expenditure of the public money, and is not obliged either to await its expenditure, as contemplated by the ordinance of December 16, 1901, or to rely on the solvency of the obligors in the bond, of which there is no evidence.   It is averred in the bill that the work, if done as contemplated by the ordinance of December 16th, will cost much more than if let by contract, as provided by section 50 of article 9, and this is, as heretofore stated, in conformity with the view of the legislature, as expressed by numerous enactments.   The city is without power to expend the public money in the manner proposed, and therefore appellee, as a taxpayer and contributor to such money, can maintain the bill.   Wright v. Bishop, 88 Ill. 302, citing numerous cases.

   The ordinance of December 16th, if of no value for any other purpose, well illustrates the wisdom of the provision requiring work to be let by contract to the lowest responsible bidder.   When work is so let, taxpayers and the public generally know what it will cost; but, by section 1 of the ordinance of December 16th, no one can even approximate its cost.   That section leaves to the discretion of the commissioner of public works to determine how many laborers shall be employed and how much they will be paid per day. The section directs the commissioner of public works to complete the work directly, and not by contract, and, in the employment of labor thereon, to employ, exclusively, laborers and artisans whom the city shall pay by the day; and further provides that "every laborer and artisan employed under this section shall be certified by the civil service commission to the commissioner of public works," in accordance with the civil service act and the rules of the commission.   The court regards it very doubtful whether laborers employed by the day and paid by the day, who may be employed to-day and not to-morrow, are within the provisions of the civil service act, and it is the opinion of

the writer that they are not; that the words "places of employment," in the third section of the act, mean places permanent in their character, such as clerkships and other subordinate positions in a department of the municipal government; that those words, as used in the act, can not properly be applied to laborers hired by the day, in an emergency or occasion temporarily requiring such hiring, and that it is not contemplated or intended by the act that such laborers must pass a civil service examination as a necessary condition of their being employed temporarily by the city. If these views are correct, it follows that, even if the ordinance were legal in ordering the work to be done by daily labor, it could not be so done, because of the prohibition against the employment of any laborer not certified by the civil service commission. But, however this may be, the ordinance, in directing the work to be done by daily labor, and not by contract with the lowest responsible bidder, is violative of the city charter.

The order of injunction appealed from will be affirmed.