Mohr v. City of Chicago.

---

### Joseph Mohr v. City of Chicago, et al.

#### Gen. No. 11,704.

1. INJUNCTION—*when, lies to restrain municipality from entering into contract, etc.* An injunction will lie at the suit of an unsuccessful bidder to restrain a municipality from entering into a contract and from proceeding with an improvement therein to be contemplated, where it appears that such municipality after making plans and specifications, advertising for and receiving bids for the construction of such improvement, permitted the person with whom it is about to enter into a contract for such work, after such bids had been opened, to change and modify his bid in a material respect.

Proceeding to enjoin municipality from entering into contract, etc. Appeal from Circuit Court of Cook County; the Hon. EDWARD O. BROWN, Judge, presiding. Heard in this court at the March term, 1904. Reversed and remanded with directions. Opinion filed May 26, 1904.

RUBENS, DUPUY & FISCHER, for appellant; GEORGE A. DUPUY, of counsel.

WILLIAM D. BARGE, for appellees, City of Chicago and Frederick W. Blocki; EDGAR BRONSON TOLMAN, Corporation Counsel, of counsel.

JAMES J. BARBOUR, for appellee Freeman.

MR. JUSTICE WINDES delivered the opinion of the court.

Appellant filed a bill against the appellees, which was subsequently amended and engrossed, to enjoin the city of Chicago from entering into or executing any contract for the construction of a steam boiler plant of six boilers to be erected at the Fourteenth street pumping station, Chicago, and to enjoin all of said appellees from taking any steps to carry out such contract, and to prevent the city from paying out any money on account thereof. The appellees, the city and Blocki, filed joint and several answers, and the Freeman Company, the lowest bidder for a contract for the construction of said plant, filed a separate answer, and, after issues joined, the cause was heard upon the pleadings and evidence taken in open court, and a decree rendered dismissing the bill as amended for want of equity, from which this appeal is taken.

The question presented for decision is, whether the city of Chicago, after making plans and specifications, advertising for and receiving sealed bids for the construction of the boilers of a water plant to cost $95,000 and upwards, may, upon the opening of such sealed bids, change or modify the same in a material respect. While other questions have been quite elaborately argued in the printed briefs, as well as in the oral arguments, we think the question as above stated is the only one that need be decided, since, in our view, it controls the case.

The statute (Hurd's Rev. Stat. 1895, p. 285, ch. 24, art. 9, sec. 50), in reference to the letting of contracts for public works by municipalities, is as follows:

"All contracts for the making of any public improvement to be paid for in whole or in part by a special assessment, and any work or other public improvement, when the expense thereof shall exceed $500, shall be let to the lowest responsi-

ble bidder in the manner to be prescribed by ordinance, such contract to be approved by the mayor or president of the board of trustees. Provided, however, any such contract may be entered into by the proper officer without advertising for bids, and without such approval, by a vote of two-thirds of all the aldermen or trustees elected."

This statute was held by this court, in City of Chicago v. Hanreddy, 102 Ill. App. 1–7, to be in force and controlling in the letting of contracts by municipalities such as the one here in question.

The ordinances of the city of Chicago relative to the same subject-matter, in so far as material in this case, are as follows:

"Sec. 1612. Whenever any public improvement shall be ordered by the city council, which is to be paid for by special assessment, * * * the commissioner of public works shall advertise in some newspaper printed in the city of Chicago, of general circulation, for proposals for doing said work. * * * A plan or profile of the work to be done, accompanied with specifications for the doing of the same, shall be first placed on file in the office of said department before any such advertisement shall be made.

" Sec. 1626. When the expense of any work or public improvement shall exceed the sum of five hundred dollars and the same is to be paid out of the general fund or the water or sewerage fund of said city, the doing of said work shall be let by contract, in the same manner as provided in cases where the expense of the same is to be paid for by special assessment."

No question is made in this case as to the sufficiency of the proceedings by the commissioner of public works and the city of Chicago toward letting the contract, so far as concerns the advertising for bids or any other matter, save that it is claimed the plan or profile of the work and the specifications accompanying the same, which were prepared by the city engineer and submitted to the different persons desiring to bid for the construction of the boilers in question, were not sufficient to furnish a certain and common basis for competitive bidding; also that the bidders were required to furnish their own plans and specifications; and that the bid of the Freeman Company, to which the con-

tract was awarded, after the bids were opened, was changed in material respects, and the city was proceeding and intended to enter into a contract with that company to construct said boilers, upon the basis of such changed bids, for the amount thereof, to wit, $95,000. The plan or profile of the boilers cannot be reproduced in this opinion, nor need the specifications accompanying the same be stated, because of their length, and the conclusion reached by us. For the purposes of this decision it may and will be assumed that the plans and specifications for the work in question, prepared by the city and submitted to the different prospective bidders, were sufficiently definite and specific to furnish a basis for intelligent competitive bidding, and are in substantial compliance with the ordinance above quoted. In fact the engineer of John Mohr & Sons, a corporation, which was one of the bidders, and whose president is the appellant, testified with regard to these specifications as follows:

"Q. Is there anything about these specifications required by the city which will show anything that you could not prepare an intelligent bid upon?

A. We can make an intelligent bid upon it, yes.

Q. And you did make an intelligent bid upon it?

A. I think so.

Q. Is there anything about it which will prevent anybody who understood their business as well as you and your firm did to make an intelligent bid?

A. No, sir."

Several other witnesses testified to the same effect, and that there was nothing ambiguous or unintelligible about these specifications.

Under the head of " Special and General Requirements " in the specifications appears the following, to wit:

"TIME OF INSTALLATION: As the time required for the installation of the boilers is an essential element of this contract, bidders will stipulate the length of time required by them to install the first battery, after being duly notified in writing by the commissioner of public works that the existing battery of three boilers is ready for removal.

Mohr v. City of Chicago.

They will also stipulate the length of time required for the removal of the old boilers and their appurtenances, and the installation, ready for operation, of the second battery, after proper notification has been given by the commissioner of public works to proceed with the work.  Similarly a time limit will be specified for the removal of the old boilers and the installation of the third battery.  It is stipulated and agreed that the entire coal-conveying plant shall be complete and ready for operation within one week after the limit of time guaranteed for the installation of the third battery of boilers.  This element of time as guaranteed will be taken into consideration in canvassing the bids. The work in the shops shall begin immediately after the signing of the contract.  It is also stipulated and agreed that the work of installation of the plant called for by these specifications shall be begun immediately after due notice has been given in writing by the commissioner of public works that the contractor can proceed with his operations in the boiler-room, and such work shall be continued in such order and manner as to secure the completion of the work to be done under this contract and of each of the batteries in the order and within the time specified by the contractor and made a part of this contract.  Should the contractor neglect or refuse or fail to complete the successive parts of the work in the order or within the time guaranteed, then and in that event it is hereby understood and agreed that the city will deduct and retain out of such moneys as will be due or which may become due and payable to the contractor, the sum of fifty dollars ($50) per day for each and every day that each battery is delayed in its completion beyond the specified time, such moneys to be taken and considered as liquidated damages which the city will sustain by reason of such default.  If, in the event that the successive batteries shall be completely ready for firing in less time than that guaranteed, then the city agrees to pay the contractor as a reward fifty dollars ($50) for each and every day that each battery is completed before the limit of time guaranteed."

The specifications also require, under the heading of "General Design—Feed Water Purifier," that "each boiler shall be provided with some approved feed water purifier of ample size to prevent the deposit of scale inside the boiler shell."  Also a further provision, in substance, that all bidders should furnish with their respective bids "complete

and detailed plans, drawings and specifications of the boilers they propose to furnish, showing all dimensions, character of material," etc., and every detail of work, with kind and character of material necessary to complete the plant in question according to their respective bids, plans and specifications.

Pursuant to the advertisement, four bids were received, ranging in amount from $95,000, being the bid of the appellee Freeman Company, up to $126,819.50, each of which bids, except that of Mohr & Sons, was accompanied by detailed plans and specifications for the different items of the boiler plant, which differ slightly in many respects, but show the most material difference with regard to the feed water purifiers and the length of time in which they respectively proposed to complete the work. The aggregate of time for completion of the work of the highest bid was 280 days, another bid 210 days, and the remaining two bids 180 days each, one of which was that of the appellee Freeman Company. Each of the bids provided for feed water purifiers, as required by the city specifications, except that of the appellee Freeman Company, in which the specification was for one feed water purifier to each battery instead of to each boiler. The city specifications require that the boilers be placed in batteries of two boilers in each battery. No specifications were submitted with the bid of Mohr & Sons, but they undertook to do the work in accordance with the city's specifications.

Although we assume that the plan and specifications prepared by the city are sufficient to furnish a basis for intelligent competitive bidding, and that the result in this case, so far as shown, has caused no special injury to the city, we deem it not improper to state that, in our opinion, the requirement of the city that bidders submit with their bids plans and specifications giving the details of the work they proposed to do, and of the kinds, character and qualities of materials they proposed to use in doing the work, while not forbidden, is not contemplated by the statute or ordinances of the city, and is calculated to be a source of serious

complication, if not a basis for fraud or favoritism in the letting of the contract to do the work.   The law clearly contemplates that before bids are advertised for, the city should determine just what work was to be done and the kind, character and quality of materials to be used therein, and should prepare a plan or profile of the work, with specifications so definite and sufficiently detailed that any one experienced in such matters would be able to determine therefrom the particular work to be done in all its details, and the kind, character and quality of materials to be used therein.   Sanitary Dist. v. Lee, 79 Ill. App. 159, and cases cited.   We are unable to conceive what could be the purpose of the commissioner of public works, or any one representing the city, in requiring plans and specifications from bidders with their respective bids, unless it was to serve as a basis of some favoritism in awarding the contract, or a means of education to the city engineers as to plans and specifications for future work of like character, or of this particular work in case of the rejection of all bids and a re-advertisement.   Waiving, however, any question in this regard, the serious difficulty presented is in the changes which were permitted in the bid of the appellee Freeman Company after the bids were opened and before the contract was awarded.   Section 1613 of the city ordinances requires that "in all cases, the bids for doing any work, or making any public improvement, shall be sealed bids," and further provides that "said bids shall be opened at the hour and place mentioned" in the advertisement for the same; and section 1614 requires that all contracts exceeding in amount the sum of $500 should be let by the "commissioner of public works to the lowest reliable and responsible bidder or bidders, whose bid does not exceed the estimate."

After the bids were opened the assistant city engineer, under date of December 7, 1903, sent a communication in writing to the superintendent of public works, in which it was stated, among other things, that he had carefully looked over the plans and specifications of the different bidders, calls attention to differences therein, (specifically

to the matter of time), and says that " the element of time is a very important element  *  *  *  that this time element is of vital importance;" also to the difference between the city's specifications and that of the lowest bidder, the Freeman Company, with regard to the feed water purifier, and further says that because the contractor would be " required to strictly conform to the specifications of the city at all times," and considering the fact that the type of boilers, etc., in all cases are practically identical, he recommends that the contract be awarded to the lowest bidder, the Freeman Company. Thereafter the Freeman Company, in a written communication to the commissioner of public works, agreed to change its bid and furnish one feed water purifier for each boiler, and changed the time of completion of the work so that it would be completed, on the first two boilers, within 100 days from the time it got notice from the engineer's department of the city that it was ready for the placing of the first two boilers, the " next two boilers in forty days after such notice being received, and the last two boilers in an additional forty days from such notice, making total time of 180 days for the completion of the work from the time that we get the first notice for putting in the first two boilers, providing orders are given immediately after the placing of the first two boilers for the placing of the second two." The sealed bid of the Freeman Company as to the matter of time contains the following, to wit:

" The undersigned hereby proposes and agrees to have the first battery of boilers in place complete and ready for operation within one hundred (100) days after written notice has been given by the commissioner of public works to the contractor to remove present battery Number 1.

The undersigned hereby proposes and agrees to have a second battery in place complete and ready for operation within 140 days after written notice has been given by the commissioner of public works that the present battery Number 2 can be removed or ———— days after date of contract.

The undersigned hereby proposes and agrees to have the third battery in place complete and ready for operation

Mohr v. City of Chicago.

within 180 days after written notice has been given by the commissioner of public works that the present battery Number 3 can be removed or ——— days after date of contract."

Upon the basis of these changes in the bid of the Freeman Company, though the amount of the bid was in no respect changed, it appears that the contract was awarded to that company, and when this bill was filed the city was proceeding and intended to make a contract with that company upon that basis.

It is true, that, considering the amount of the contract, the change of the bid with respect to the feed water purifiers is not a very important change; nevertheless it is a material one, since it appears from the evidence that the cost of furnishing a feed water purifier for each boiler separately would cost from $800 to $1,500 more than to furnish one large purifier for each battery of two boilers, such as was specified in the bid of the Freeman Company.

The element of time of completion of the work is, however, as appears by the record, one of most serious importance, and a matter which was controlling with the city engineer in determining as between the respective bids submitted. The difference in time in which the highest bidder proposed to complete the whole work, and the time as fixed by the changed bid of the Freeman Company is 100 days, if it be assumed that the time is computed from the same date, which is not by any means certain. It will be noted, from the part of the city's specifications under the head of " Time Installation," it is stated that " the time required for the installation of the boilers is an essential element of this contract; * * * this element of time as guaranteed (referring to the removal of old boilers) will be taken into consideration in canvassing the bids." In this same connection it is also provided that if the contractor should fail to complete the successive parts of the work within the times agreed, that the city would deduct from the contract price due the contractor " $50 per day for each and every day that each battery is delayed in its completion beyond

the specified time;" also a further provision that if the successive batteries should be completed in less than the guaranteed time, the city would pay to the contractor a reward of $50 for each day the same should be completed before the time agreed upon. It is thus apparent that not only was the element of time agreed to be an essential matter in the letting of the contract, but it was of the greatest importance to the city as well as the contractor, for the reason that if he fell short of the time agreed upon, he suffered a heavy forfeiture, whereas if his work was completed within less time, he would receive a large bonus over the contract price.

It should also be noted that under the sealed bid of the Freeman Company the matter of time is exceedingly indefinite as to the second and third batteries, and depends entirely upon the time when notice should be given that said batteries could be removed; and in order to bring the whole completion of the contract within the time specified in its bid as changed, notice by the city for the removal of the second and third batteries would have to be given at the same time as the notice as to the removal of the first battery.

While it may not have been essential that time be made an element of the contract, it was so made by the city in its specifications, and was in no way fixed beforehand so that the bidders had any common basis on which to submit their bids in that regard. Waiving, however, this point, we are of opinion it was a clear violation of the law to permit the change in the bid of the Freeman Company, as to the matter of time.

There seem to be no direct decisions in the courts of review of this state upon the point, but we think it obvious that to allow the change of a bid in any material respect after the bids are open, is a clear violation of the purpose, intent and spirit of the law, and opens the door for preferences and favoritism as between the different bidders, if not to the grossest fraud. When a bid is permitted to be changed it is no longer the sealed bid submitted in the first instance, and, to say the least, is favoritism, if not a fraud—

Mohr v. City of Chicago.

a direct violation of the law, and cannot be too strongly condemned.    State v. Board of Commrs., 11 Neb. 484; Beaver v. Trustees, 19 Ohio St. 97–108; Boren v. Commrs., 21 Ohio St. 311–22; Sanitary Dist. v. Lee, 79 Ill. App. 159–69.

The Nebraska Supreme Court, in the case above cited, which involved the sale of certain county bonds on a published notice for sealed bids similar to the proceeding here in question, held that the county commissioners had no power or right to permit a bid to be changed after the bids were opened, that their attempt so to do was a void act, and say :  " After the bids were submitted and opened, no material change of their terms was permissible.    The commissioners were required to act upon them in the condition they then were.    They had the power, under the law, to accept or reject a bid, but they had no power to permit its amendment privately so as to make it better than that of another bidder, or to render it acceptable to them."

In the Beaver case, the Ohio Supreme Court had under consideration the powers of the trustees of an institution for the blind, with reference to sealed proposals for furnishing labor and materials toward the erection of a state institution under a statute which required them to let the contract for the same upon the basis of such sealed proposals to the person who should offer to furnish the same at the lowest price.    One of the bidders claimed to have made a mistake in his bid which, if corrected, would make his bid the lowest, and the trustees of the institution agreed with this claim, and it was proposed by them to act accordingly. There was no intimation or insinuation of any want of perfect good faith on the part of the trustees or any party to the proceedings.    The court awarded a peremptory mandamus to another bidder than the one claiming his bid was the lowest bid, after the correction of the mistake, and say : " The proposals are to be in writing and sealed; and the action of the trustees is to be taken on the basis of what those proposals are found to be when opened, and not on what they may have been intended to be, but are not.    To hold otherwise would be to nullify or reverse the evident policy

of the statute, and to render possible and easy the exercise of such favoritism by the trustees toward the particular parties as it is the obvious policy and intention of the statute to render impossible. 'The contract or contracts shall be awarded to and made with the person or persons who shall offer to perform the labor and furnish the materials at the lowest price.' How offer to perform and furnish ? Through the medium of written, sealed proposals, filed within the time limited in the advertisement. The statute knows no other proposals or offers but these. The trustees are invested with no discretion in the matter, but, on the contrary, we are satisfied it is the intent and policy of the statute to withhold it, and thereby shut the door against all favoritism on the part of the trustees on the one hand, and, on the other, to prevent such an excited, intriguing and, perhaps, ruinous scramble among bidders as would be not unlikely to ensue if the proceeding were assimilated to an open auction sale of contracts."

In considering the sanitary district statute, which is similar to the statute here in question, we said, citing numerous cases, that the spirit and intent of the act was that nothing " be left to the discretion of the trustees, after the bids shall have been received, except to determine who is the lowest responsible bidder. The question who is the lowest bidder is determinable by a mere inspection of the bids, and involves no exercise of discretion, but only a comparison of figures."

We regard the principle of these decisions, in the absence of any positive ruling of the Supreme Court, as controlling in the case at bar, and we are therefore of opinion that the city and commissioner of public works, in permitting the amendments by the Freeman Company of its bid as above stated, and in proceeding to award the contract to that company, acted without any warrant or authority in law, and that the injunction should have been issued as prayed.

Authorities are cited by counsel for appellees which hold in effect that persons claiming to have been injured by reason of certain irregularities in special assessment pro-

ceedings, and in other cases by reason of the acts of officials of private corporations in the management of corporate property, cannot complain unless they showed that their interests would likely be prejudiced by such acts, that there was some fraud, or there would be a reckless waste of property.    We think that this line of cases is not applicable to the case at bar, since here, if we are right in our conclusions, the action of the city and commissioner of public works, being without authority of law, is void, and any person interested may complain.    People ex rel. Harris, 203 Ill. 272–6; A., T. & S. F. Ry. Co. v. Maegerlein, *ante*, p. 222.

The decree of the Circuit Court is reversed and the cause remanded, with directions to enter a decree according to the prayer of the bill of appellant.

*Reversed and remanded with directions.*