100    APPELLATE COURTS OF ILLINOIS.

Griffiths v. Sanitary District of Chicago, 174 Ill. App. 100.

## John Griffiths et al., Trading as Griffiths & McDermott, Appellants, v. The Sanitary District of Chicago, Appellee.

### Gen. No. 17,125.

1. APPEALS AND ERRORS—*when affirmance will be ordered where instructions are irreconcilable.* Where a contractor appeals from a judgment in a suit against a sanitary district and the instructions are so irreconcilable one with another that the jury could have received from them no proper conception of the law, the judgment cannot be affirmed unless the court concludes that no result more favorable to the plaintiff could properly have been reached.

2. APPEALS AND ERRORS—*when inaccurate instructions not injurious.* Technically erroneous instructions advising a jury that a contractor is not entitled to recover on certain claims are not injurious when such claims cannot be allowed.

3. BUILDING AND CONSTRUCTION CONTRACTS—*when recovery cannot be had where approximate work in contract is not required.* Where a contractor enters into an excavating contract with a sanitary district by bidding, the parties are dealing at arms length, and, on the actual quantity of earth being found to be less than the estimate, the contractor cannot recover a larger amount per cubic yard for excavating than was mentioned in the contract, where from the contract itself and other sources he could have determined himself the approximate amount of the entire excavation.

4. BUILDING AND CONSTRUCTION CONTRACTS—*rights of contractor when changes are made.* Where a contract is made for a gross sum for the construction of a piece of work and changes are afterwards made in the material used, as to size or quality, the contractor may refuse to make the changes unless by the contract he is in terms required to do so, and may acquiesce in the forfeiture of the contract and recover upon a *quantum meruit* for the material furnished and his labor.

5. BUILDING AND CONSTRUCTION CONTRACTS—*when provision in contract is unilateral.* A provision in a contract between a sanitary district and a contractor that nothing in the contract shall be construed to affect the right reserved by the district to reject the whole or any portion of the work should the certificate to be given on completion be found to be inconsistent with the terms of the contract, or otherwise improperly given, is unilateral and is not binding on the contractor.

6. BUILDING AND CONSTRUCTION CONTRACTS—*when bill for extras is not binding on contractor.* Where the purpose of a contract

requiring a contractor to furnish a "bill for extras" is to advise defendant of the extra labor or material furnished, an instruction stating that no recovery could be had upon any claim for extra compensation not included within a claim for extras is erroneous in so far as it limits the amount of recovery to the amount claimed in an itemized "bill for extras."

7. BUILDING AND CONSTRUCTION CONTRACTS — *when instruction should apply to facts of the case.* In an action to recover on a construction contract, an instruction merely reciting the provisions of the contract without applying them to the facts of the case should not ordinarily be given.

8. EVIDENCE—*what proper in rebuttal.* A trial court may in its discretion refuse to receive in rebuttal evidence properly receivable as part of a plaintiff's case in chief.

9. EVIDENCE—*when proper foundation is not laid for admission of record.* Where a contractor is suing a sanitary district for additional compensation, a record of the time the contractor's employees spent on the work, made by a sanitary district engineer from reports furnished him by his men, is not admissible in evidence when none of the men who furnished the information testified as to the correctness of their reports.

Appeal from the Circuit Court of Cook county; the HON. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Reversed and remanded. Opinion filed October 22, 1912.

FRANCIS W. WALKER and ALBERT G. WELCH, for appellants.

JOHN C. WILLIAMS, for appellee; P. C. HALEY, JAMES S. HANDY and WALTER E. BEEBE, of counsel.

MR. PRESIDING JUSTICE CLARK delivered the opinion of the court.

This controversy arises out of a contract entered into by the appellants with the appellee, hereinafter referred to respectively as the plaintiffs and defendant, for the excavation of the rock and earth in a portion of the main drainage canal of the Sanitary District of Chicago, described as section one, and for the construction of certain work incident thereto. The action was *assumpsit*, the declaration containing the common counts and an additional count which alleges:

102     APPELLATE COURTS OF ILLINOIS.

Griffiths v. Sanitary District of Chicago, 174 Ill. App. 100.

"That the defendant being a body politic and corporate, organized under an act of the legislature, entitled 'An Act to create Sanitary Districts and to remove obstructions from the Desplaines and Illinois Rivers,' approved and in force July 1, 1889, having duly advertised for bids as required by law for the work contemplated by the agreement in said count mentioned, and having made and entered into a certain written agreement with plaintiffs in and by which plaintiffs were employed to do all the work and to furnish all the materials, tools, explosives, labor and all appliances required by said agreement in the manner and under the directions therein stipulated that should be necessary for the complete excavation and entire removal of earth, rock, glacial drift and other material from section 1 of defendant's Main Drainage Channel; to construct certain retaining walls at the sides of said channel, to be laid in cement mortar, to lay certain slope paving and to deliver certain material for the construction of a certain levee adjacent to said channel, agreed in and by said contract to pay the plaintiffs 80 cents per cubic yard for such rock excavation, 0.429 per cubic yard for such glacial drift excavation, $2.90 per cubic yard for such retaining wall, 20 cents per cubic yard for such levee material, and 60 cents per cubic yard for such slope paving, from time to time as said work progressed; that plaintiffs promptly entered upon the performance, of said work and completed the same on or about November 1, 1897, to the satisfaction of the defendant and its chief engineer; and defendant on or about November 24, 1897, by a resolution of its Board of Trustees accepted the said work upon the report and certificate of the chief engineer, that the same had been completed and performed to the satisfaction of said chief engineer.

"That, in order to induce plaintiffs to enter into said agreement and to perform the work required therein, defendant, well knowing that plaintiffs would not be required to excavate to exceed 1,160,801 cubic yards of earth from said channel, nevertheless represented to plaintiffs in and by its advertisement for bids and by the terms of said agreement that plaintiffs would be required in the performance of said agree-

ment to excavate approximately 1,662,476 cubic yards of such earth or glacial drift from said channel; that plaintiffs believing that defendant had ascertained the approximate quantity of earth to be so excavated refrained from making any independent investigation in regard thereto, and being ignorant of the actual or approximate quantity of glacial drift to be so excavated, but relying upon and believing in the truth of said representation of the defendant, in consideration thereof, entered into said agreement with defendant and agreed to perform the several classes of work at the various prices set out in the first count; that plaintiffs thereupon purchased a large plant, tools, and machinery for the excavation of the aforesaid 1,662,476 cubic yards of earth or glacial drift at a cost to them of $65,000, which was the fair and reasonable value of said plant, tools and machinery; that said work was performed to the satisfaction of the defendant and accepted by resolution of its Board of Trustees November 24, 1897; that plaintiff excavated all of the solid rock and glacial drift in said channel required to be excavated, to wit.: 1,160,801 cubic yards of earth or glacial drift, and 554,326 cubic yards of solid rock and constructed certain masonry slope paving, etc., as required by said contract; that defendant, though often requested, has refused and still refuses to pay plaintiffs for the excavation of the additional 501,601 cubic yards required to be excavated under said agreement, by means whereof the cost of the plaintiffs of the work required of and performed by plaintiffs under the terms of said agreement was increased by the addition thereto of the proportion of the cost of said plant, tools and machinery apportionable to 501,601 cubic yards of unexcavated earth, in the sum of $17,750.''

Other counts were added but abandoned. Four pleas were filed by the defendant, the first of which alleges payment; the second pleads the five year statute of limitations to all the alleged causes of action in the declaration; the third the ten year statute of limitations, and the fourth satisfaction and discharge.

The damages to the plaintiffs, as alleged in the dec-

104    Appellate Courts of Illinois.

Griffiths v. Sanitary District of Chicago, 174 Ill. App. 100.

laration, were $150,000, the actual amount claimed being about $65,000. There was a trial before the court and a jury and a verdict rendered for the plaintiffs in the sum of $6,000. Motion for a new trial made by the plaintiffs was overruled and judgment entered upon the verdict, from which judgment this appeal has been prosecuted by the plaintiffs.

Errors are alleged in the admission and rejection of testimony; in the giving of certain instructions; in refusing to give instructions tendered by plaintiffs and in the modification of certain instructions tendered by the plaintiffs.

Work under the contract was completed about November 16, 1897. Suit was brought February 16, 1898, and a declaration consisting of the common counts filed on the same day. The one additional count relied upon, heretofore set forth, was filed November 15, 1907.

On November 29, 1897, a release was executed by the plaintiffs as follows:

*"Know all men by these presents,* that we, John Griffiths and Michael McDermott, co-partners doing business under the firm name and style of Griffiths & McDermott in consideration of One Dollar ($1) to us in hand paid, the receipt whereof is hereby acknowledged, and of the full satisfaction to us by payment of the sum of one hundred five thousand six hundred forty-one and 28/100 dollars ($105,641.28) by the Sanitary District of Chicago, in full of all liabilities arising in any manner out of the certain contract between the Sanitary District of Chicago and said Griffiths & McDermott for the complete excavation and removal of all earth, rock, glacial drift, and other material from that portion of the main drainage channel of said District, known as 'Section 1,' which contract bears date of May 23, 1894, and which was awarded said Griffiths & McDermott in accordance with the report of the Joint Committee on Engineering and Finance of said Board of Trustees, at a regular meeting of said Board, held on May 23, 1894 (page 1962 of proceedings of said

Board), have waived and released and do hereby waive and release, to said Sanitary District of Chicago, its successors and assigns, and forever discharge it, of all liabilities of reserve percentage, claims or demands of whatsoever kind or nature, arising upon said contract or in any manner connected therewith, or relating thereto, excepting, however, a claim in the sum of forty-six thousand three hundred dollars ($46,300), which was retained out of the final certificate of the Chief Engineer of said District upon the order of its Board of Trustees at a regular meeting held the 24th day of November, 1897, in accordance with the report of its Committee on Engineering with reference thereto, and which sum represents the aggregate of all claims now in litigation arising out of the work on said section, and to which the Sanitary District of Chicago has in any way become interested, or been made a party defendant. Also excepting from said waiver and release of claims now held by Griffiths & McDermott against said District a certain bill for extras which was heretofore filed with the Chief Engineer of said District, setting forth in detail the claim for extras and additional compensation which the said Griffiths & McDermott allege to be due them by reason of the execution of the work upon said section 1. Said claims for extras being numbered 1 to 11 both inclusive; hereby also releasing and forever discharging said district of any and all claims of whatsoever kind or nature, excepting only such as are hereby specifically designated.''

The sum of $46,300 mentioned in the release was afterward paid.

The bill for extras referred to in the foregoing, as filed with the chief engineer, apears to have been filed November 17, 1897, and reads as follows:

''The Sanitary District of Chicago,
                        To Griffiths & McDermott,      Dr.

For extra labor and materials and for losses and damages sustained on section 1, Drainage Canal, as follows:

1. Cost of dam, west end of section ....$   379.80

106    APPELLATE COURTS OF ILLINOIS.

Griffiths v. Sanitary District of Chicago, 174 Ill. App. 100.

2. Veneering face of walls, from base to top of rock, of backing left in as ordered .............................. 9,300.00
3. Scabbling where walls were set off and back of walls not excavated ........ 6,000.00
4. To leveling up for set-offs on face of walls ...................,.......... 11,174.00
5. Loss of train of cars on overhaul .... 1,575.00
6. To 10 per cent. on 414,300 yards of excavation that the specifications called for, but upon completion we were informed this material was not there.. 17,773.47
7. To 18,222 yards delivered on overhaul, being ½ yard on 36,444 cars, we being allowed but 4½ yards, while Heldmaier & Neu were allowed 5 yards on same sized cars, at 20 cents a yard ........................... 3,644.40
8. To loss on tax warrants received during 1896 .......................... 3,166.24
9. To loss by reason of having to shut down August 15, 1896 ............. 15,000.00
10. To loss by being compelled to change methods of work and extra cost and delay in completing same .......... 49,879.00
11. To 8,000 yards excavation delivered on overhaul, not allowed, 20 cents........ 1,600.00

Total ...................$117,491.71"

It is charged by counsel for plaintiffs and admitted by counsel for defendant that the instructions given by the court to the jury are so irreconcilable one with another that the jurymen could have received from them no proper conception of the law which should govern them in arriving at their verdict. Instructions proffered by the plaintiffs were given which were in direct opposition to those given as tendered by the defendant, some of the latter having been modified by the court. It follows, therefore, that the judgment cannot be affirmed unless this court, upon a review of the evidence, is persuaded that no result more favorable to

the plaintiffs could properly have been reached; in other words, that the errors in instructions as given were harmless. After a careful consideration of the huge record in the case, we are unable to reach this conclusion, and the judgment must be reversed and the cause remanded.

As there must be a new trial, we deem it our duty to pass upon the questions presented in this appeal, which necessarily must be considered by the court upon such retrial. The claim to which the principal argument, oral as well as printed, has been directed, relates to the matter of the glacial drift excavation, and apparently was attempted to be set forth by the plaintiffs in their claim for extra labor, material, etc., as item No. 6. It will be noted that the claim is for "10 per cent. on 414,300 yards of excavation that the specifications called for, but upon completion we were informed that this material was not there—$17,773.47." Counsel for plaintiffs admit that this claim was not presented in proper form by their clients, but insisted at the trial and in this court that it should be regarded as a basis for the claim now made, to wit, that because of a mistake in the advertisement the plaintiffs were entitled to recover a larger amount per cubic yard for the glacial drift excavated, this amount being fixed in the aggregate at more than $16,000. They also insist that because of an alleged error in the profile they were deceived into the belief that there was sufficient stone between stations 739 and 754 with which to build retaining walls between these stations; that they were obliged to haul the stone for the walls between these stations an average of 1,200 feet from stations 755 to 760, and that because of such deception they are entitled to receive for this extra haul of stone a sum exceeding $6,000.

It appears from the record that there was attached to the contract as an exhibit a schedule of the "Approximate quantities on section 1, upon which bids are

asked." This apparently was copied from the advertisement, and reads as follows:

"Approximate quantities on Section No. 1
Upon Which Bids are Asked.

| | Cubic Yards. |
|---|---|
| Glacial Drift | 1,662,476 |
| Solid Rock | 459,724 |
| Retaining wall, dry | 60,188 |
| Retaining wall, laid in cement | 60,188 |
| Slope paving | 1,154 |

Overhaul price on a minimum quantity of 150,000 cubic yards placed in or on levee east of the Willow Springs road."

It also appears from the record that an assistant engineer of the defendant, in making this schedule, by mistake added the number of yards of solid rock to the glacial drift, thus making the total amount of the excavation about 400,000 cubic yards more than the total amount was found actually to be when the contract was completed. It ought also to be said that this matter was discovered and reported by the engineer soon after the work commenced, and attention was called to it in reports made to the Board. It is claimed by the defendant, but not admitted by the plaintiffs, that these facts came to the knowledge of plaintiffs at an early stage of the work. It appears that the amount of solid rock actually excavated was nearly 100,000 cubic yards greater than that named in the schedule as the approximate quantity. The plaintiffs therefore were paid, at the contract price, for excavating nearly 100,000 cubic yards more of rock than was set forth in the schedule as the approximate quantity. They were paid for excavating 1,160,801 cubic yards of glacial drift, approximately 500,000 cubic yards less than the estimate. No claim is made by plaintiffs that they should be paid a larger sum than the contract price per cubic yard for excavating the rock, because the amount of the estimate was less than the amount found to be in the portion of the canal covered by their con-

tract. On the other hand, they claim they were enti-
tled to receive, as they did receive, the full contract
price per cubic yard for this portion of the work. As
to the glacial drift, the claim is that they should be
paid a larger amount per cubic yard than was men-
tioned in the contract, because the actual quantity
proved to be less than the estimate. It is insisted by
the defendant that neither the profile nor the schedule
should be treated as part of the contract; but in the
view we take of the case it is unnecessary to discuss
that feature.

Section D-13 of the contract is as follows:

"13. Quantity of Material.—A profile of the aver-
age surface of the ground approximately on the line
of the main channel and also of the supposed surface
of the bed rock is shown on plan 'B.' These profiles,
though approximately correct, do not purport to be
absolutely so, and are only presented as approxima-
tions, as is also the schedule of quantities attached as
an appendix hereto. The contractor is to take all risk
as to variations of the total quantity of material exca-
vated, as well as the relative amount of glacial drift
and solid rock."

It would appear from the record in the case that the
approximate amount of the excavation was as easily
ascertainable by the engineers for the contractors as
it was by the engineers for the Drainage District. In
our opinion, a simple computation based upon the fig-
ures to which the contractors had access in making
their bids, would have demonstrated that the schedule
showed in the aggregate as the approximate quantity
of the total material several hundred thousand cubic
yards more than could possibly be upon the section.
In any event, they could easily have informed them-
selves as to the approximate amount of the entire exca-
vation. The profile prepared by the engineers of the
District, and which was attached to the contract as
an exhibit, merely indicated the apparent location of
the rock, and was arrived at by making soundings.

Where a contract is made for a gross sum for the construction of a piece of work, and changes are afterwards made in the material used, as to size or quality, there is no question but that the contractor may refuse to make the changes, unless by the contract he is in terms required to do so, may acquiesce in the forfeiture of the contract and recover upon a *quantum meruit* for the material furnished and his labor. Sexton v. City of Chicago, 107 Ill. 323. The case cited is largely relied upon by the plaintiffs, as are two cases decided by this court. Sanitary Dist. of Chicago v. Lee, 79 Ill. App. 159 and Mohr v. City of Chicago, 114 Ill. App. 283. In these two cases injunctions were issued at the instance of unsuccessful bidders for public contracts, for the reason that in one of them the plan of the structure had been changed after the advertisement was made and bids received; and the other for the reason that the design of the structure was not determined upon before the advertising for bids. In our opinion these cases establish no precedent for our consideration upon the point in question.

By section 13 of the contract, heretofore set forth, the plaintiffs took all the risk as to variations from the estimates of the total quantity of material excavated, as well as the relative amounts of glacial drift and solid rock. If the advertisement be treated as a part of the negotiations leading up to and forming the basis of the contract, it must be presumed that the entire negotiations of the parties were included in the written contract as executed. If the total amount of excavation or the relative amounts of glacial drift and rock were regarded as important, the plaintiffs should have insisted that there be inserted in the contract a provision whereby if the amount of glacial drift (and rock) should prove to be materially less than the estimate, the amount to be paid them per cubic yard be increased. Nounnan v. Sutter County Land Co., 81 Cal. 1.

The parties were dealing at arms length and pre-

sumably had equal facilities to obtain knowledge of the conditions to be dealt with. Sanitary Dist. of Chicago v. Ricker, 91 Fed. 833, 34 C. C. A. 91.

The court charged the jury by instructions given at the request of the defendant that no recovery could be had by reason of the failure to find the amount of the glacial drift as estimated in the original advertisement. He further instructed the jury that by the release heretofore referred to the plaintiffs had waived all claim to the 1.4 cents per cubic yard for the amount of glacial drift by them excavated and that no recovery in this action can be had for or on account of said claim. The court also instructed the jury that the profile did not purport to be a definite and accurate representation of the location of the rock, and was presented and attached to the contract only as an approximation; that the presenting of the profile to plaintiffs by the defendant was not a guaranty that the rock would be found in the precise location indicated by the said profile; that therefore the expense that may have been occasioned to plaintiffs by reason of having been obliged to haul the rock for the purpose of constructing the walls between stations 739 and 754 was not recoverable.

The effect of these instructions, was to advise the jury that there could be no recovery by the plaintiffs upon the two items of their claim which we have been considering. As in our opinion no recovery could be had upon them, the instructions, even if technically erroneous, which we do not decide, had no injurious effect upon the rights of the plaintiffs.

The next matter for consideration is the claim of plaintiffs for damages alleged to have been occasioned on account of directions given by the chief engineer of defendant as to the method of excavation at the sides of the prism of the channel. This item would seem to be identical with No. 3 of the bill of extras, *supra.* The amount of the claim is the exact amount of the verdict rendered by the jury, and it might be

conjectured was the basis of the recovery. The testimony in respect to this item of claim was contradictory, and it is insisted by the defendant that it conclusively shows that no damages were suffered by the plaintiffs. The defendant, however, is not complaining of the judgment. The plaintiffs, on the other hand, insist that the recovery, under the evidence, should have been for about $11,000 upon this item, and claim that they were injured in respect to the matter by instructions given by the court, which also referred to the fourth item of their claim. This fourth item appears to be based upon item No. 4 of the bill for extras.

By instruction No. 7, given at the request of defendant, the jury were informed that under the terms of the contract "if the chief engineer and his assistants have determined and ascertained the measurements and calculations of the quantities and amounts of the several kinds of work done and performed under said contract, that such measurements and determinations are final and conclusive in this action, and no recovery can be had in this action for any overhaul or additional work claimed by the said plaintiffs which have been determined and settled by the said chief engineer and his assistants."

Clause O of the contract provides "that nothing herein contained shall be construed to affect the right hereby reserved of the said party of the first part to reject the whole or any portion of the aforesaid work should the said certificate be found to be inconsistent with the terms of this agreement, or otherwise improperly given." It has been held in similar cases that this provision of the contract is unilateral; that inasmuch as the decision of the chief engineer was not to bind the Sanitary District it could not bind the contractor. Harlev v. Sanitary Dist. of Chicago, 107 Ill. App. 546; Smith v. Sanitary Dist. of Chicago, 108 Ill. App. 69; Sanitary Dist. of Chicago v. McMahon & Montgomery Co., 110 Ill. App. 510. It is sufficient to say that we

agree with this construction of the contract and therefore hold that the instruction referred to was improperly given.

We think that instruction No. 4½, by which the jury were advised that no recovery could be had upon any claim for extras or additional compensation not included within the claim for extras, was erroneous in so far as it advised the jury that the amount of recovery was limited to the amount claimed for the items respectively in the "bill for extras." The purpose of the "bill for extras" as we construe section 18 of the contract, was to advise the defendant of the extra labor or material furnished by the contractors, and it did not bind the contractors to the amount claimed.

Instruction No. 8, given at defendant's request, merely recited one of the provisions of the contract, without applying it to the facts of the case. We think the instruction served no useful purpose, and should not have been given.

By instruction No. 21, tendered by the defendant, the jury were advised in effect that if the requirement of the chief engineer that the retaining walls be constructed in cement mortar did not materially change the character of the work provided for in the contract, the plaintiffs were bound by the provision of the original contract as to price, and were not entitled to recover anything on account of the claim made by them for additional compensation for the construction of such wall. The plaintiffs offered to prove by three witnesses that the wall was not a random rubble wall, as is described in paragraph 7 of the contract. The testimony, however, was offered in rebuttal, and objection was made to it on the ground that it was not rebuttal. We are not prepared to say that the court abused its discretion in refusing to receive the testimony when offered. If it had been offered as part of the plaintiffs' case in chief we think it would have been competent.

The defendant, in order to show the length of time

114 APPELLATE COURTS OF ILLINOIS.

Griffiths v. Sanitary District of Chicago, 174 Ill. App. 100.

claimed to have been spent by sundry employees of the plaintiffs in doing the work upon the wall heretofore referred to, offered in evidence, and there was received, a large number of papers designated as "force reports." These appear to have been certified to by an assistant engineer of the defendant as being correct. The testimony showed that they were made by several men, called "force account men," who went over the section each day and counted the number of employees at work at the time. There was also evidence tending to show that the men were expected, on their return trip over the section, to check their work by again counting the men. The names of the men were not taken, but a memorandum was made in a book for the information of the assistant engineer. It was also shown that there were wall inspectors on the work, who filled out and turned in to the engineer's office every day a card containing the number of men employed on the wall that day; that the assistant engineer went out on the work himself once a week for the purpose of checking up; that he entered the reports of the "force account men" and wall inspectors in a time book in the engineer's office, which he checked back with the reports; that he made up a statement from these time books at the end of the month upon blanks furnished by the defendant for that purpose, giving the number of days for each occupation worked, with the rate of wages; that this was made out in lead pencil and checked back with the time book from which it was taken, and then after errors, if any, had been corrected, was copied in ink and turned in to the superior of the assistant engineer. It was further shown that defendant did not pay anything out upon the basis of these accounts, and that no separate account was kept distinguishing one part of the wall from another.

Objection was made to the reports on the ground that they were secondary evidence, and for other reasons. It was testified to, and apparently not contradicted, that the reports do not purport to show the

cost of the base of the wall or the offsets, as distinguished from the rest of the wall. As the testimony given by several of the witnesses for the defendant in respect to the cost of constructing the wall seems to have been based to some extent, if not entirely, upon the "force reports," the question as to their admission in evidence is of importance.

It is argued by the defendant that the reports constitute a public record. It would appear from the evidence that they were made largely to enable the engineering force of the defendant to ascertain how the actual cost of the work compared with estimates of same theretofore made—whether more or less—and also to guide the engineers in their future work. They do not appear to have been used as a basis of settlements at any time. We are not referred to any statute which requires the keeping of them, thus constituting them a public record. It has been held that documents are not to be regarded as public records unless they are made under the sanction of law and official duty. Tucker v. People, 117 Ill. 88. In the case of Chisholm v. Beaman Machine Co., 160 Ill. 101, the following language is used:

"Where there is original evidence that laborers were employed, and that their time was correctly reported by persons having personal knowledge of the facts, and that these reports were made in the ordinary course of business, and in accordance with the duty of the persons making them, and in point of time were contemporaneous with the transactions to which the reports related; and where this original evidence is combined with proof by the person receiving the reports, that he correctly entered them as reported in the time-book in the usual course of his business and duty, the entries so made are admissible as evidence to show the amount of work done."

This language is cited by the defendant as bearing out its contention. We note in the same case, however, the following language:

"Where the clerk, who makes the entries, has no

knowledge of their correctness, but makes them as the items are furnished by another, it is essential that the party furnishing the items should testify to their correctness, or that satisfactory proof thereof—such as the transactions are reasonably susceptible of—from other sources should be produced.''

The defendant's counsel also cited from 5 Ency. of Evidence, 259, the following:

''Where an entry is made by one in the performance of his duty, of facts reported to him by another in the discharge of a duty devolving upon such other by virtue of his employment, it is nevertheless admissible.''

Counsel omitted, however, the following, which appears in the same section:

''But preliminary to the admissibility of such evidence it should be shown by the one making the report, if he be living, that such report was true.''

In the case before us the men who furnished the items and who went into the field to get the information as to the number of men, namely, Beck, Messenger, Cooney and Dempsey, and perhaps others, were not called to testify as to the correctness of their work. The reports made by these men were said to have been copied two or three times, and finally to have resulted in the papers adduced at the trial. In our opinion the facts do not warrant the conclusion that the reports constituted a public record, and the proper basis for their introduction was not laid.

The judgment of the Circuit Court will be reversed and the cause remanded.

*Reversed and remanded.*